Filed 1/24/25  In re P.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re P.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.M. et al., <br><br> Defendants and Appellants. | D084765 <br><br> (Super. Ct. Nos. EJ4756B-C) |


APPEAL from an order of the Superior Court of San Diego County, Alexander Calero, Judge.  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant, J.W.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant, A.M.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

J.W. (Mother) and A.M. (Father) appeal from the juvenile court's order denying Mother's Welfare and Institutions Code[1] section 388 petition for modification of prior court orders placing their two children P.M. and D.M. with a licensed foster family and terminating Mother's reunification services.[2] We conclude that the juvenile court committed no error by finding that Mother failed to show her requested modification was in the children's best interest. Accordingly, we affirm the juvenile court's order.

FACTUAL AND PROCEDURAL BACKGROUND

Mother began using drugs at 15 years old and reported participating in drug programs before the birth of her three children. She reported being clean for four or five years before relapsing in November 2021, when she began using methamphetamine to increase her energy as the primary caregiver for her two older children, P.M. and B.W., and she also began using fentanyl daily to cope with pain in her leg. According to Mother, she felt " 'the weight of the world on [her] and no one was helping [her],' " although she received daily childcare from a family member.

Mother gave birth to her third child D.M prematurely in February 2022, believing she had suffered a miscarriage months earlier. During her pregnancy, Mother did not receive prenatal care and used fentanyl,

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

[2] B.W., Mother's eldest child and half-sibling to the children, was removed from Mother's care but is not a subject of this appeal.

amphetamine, and methamphetamine.  D.M. tested positive for all three substances at birth.  Father also had a history of substance use.

D.M. received approximately three months of in-patient care after birth.  Mother and Father each visited only once and did not make use of the video visits offered to them.

A. *Initial Dependency Petition*

Following D.M.'s birth, Mother tested positive for fentanyl, norfentanyl, amphetamine, and methamphetamine; Father tested positive for amphetamine, methamphetamine, fentanyl, norfentanyl, phenobarbital fentanyl, and barbiturates.

On April 6, 2022, the San Diego County Health and Human Services Agency (Agency) filed a section 300, subdivision (b) dependency petitions for the children and B.W.  The petitions alleged the minors were at substantial risk of harm due to the parents' substance use.  The juvenile court issued a protective warrant that same day.  D.M. remained in the hospital while the older children P.M. and B.W. were taken to the Polinsky Children's Center before being placed in a licensed foster home later that month.

B. *Voluntary Services and the Reunification Period*

Before the contested jurisdictional and dispositional hearing, social workers repeatedly advised Mother that it was imperative she engage in services, but she made no progress.  She continued to test positive for methamphetamine, amphetamine, fentanyl, and norfentanyl.

Mother failed to participate in any voluntary services and did not address her issues with illicit drugs, despite receiving numerous referrals. B.W. was placed with her biological father (not A.M.) and the court terminated jurisdiction.  At the contested jurisdiction and disposition hearing

in August 2022, the court found true the allegations in the petitions and declared the two younger children dependents.

Mother declined to engage in reunification services, though she eventually completed parenting education.  Mother made no verifiable progress on her substance use during the reunification period and continued testing positive for illicit substances.  After the children were placed in the same approved foster home together, Mother remained inconsistent with her visits.  She missed an entire three-month period of visits from October 2022 to January 2023.  Neither parent advanced to unsupervised visits.

In February 2023—six months after the jurisdiction and disposition hearing—the Agency began seeking termination of Mother's reunification services due to Mother's lack of progress.  Counsel for the children joined the Agency's recommendation to terminate reunification services.  The Agency reported that the children did not "appear to have a substantial, positive, and emotional attachment to either parent."  D.M. had never lived with the parents and P.M. was removed from their care when she was approximately two and one-half years old.  D.M. required additional care because of the prematurity of her birth and she used two preventative daily inhalers.  The court terminated reunification services on June 30, 2023, and set a section 366.26 hearing for October 25, 2023.

C. *Mother's Section 388 Petition*

Mother and Father's visits became more consistent in July 2023, though they still missed visits without notice or with limited notice.  In November 2023, five months after the court terminated reunification services, Mother entered a residential drug treatment program without notifying the Agency.  She missed four weeks of visitation, during which the

4

children did not inquire as to why visitation had stopped and did not suffer setbacks.

When interviewed, P.M. identified her foster family as her forever family. P.M. added Mother to the list of people who could "visit and live in her forever home" only after she was prompted. The children consistently looked to their caregivers for emotional support and comfort, even while Mother was also present. For his part, Father was in and out of federal and state custody for the duration of the dependency matter.

Mother was three months sober when she filed a section 388 petition in February 2024, requesting that she be given custody of the children or, in the alternative, expanded visitation. Mother asserted that she had completed residential drug treatment, maintained sobriety, taken parenting classes and fully addressed the concerns that brought the children before the juvenile court. Following completion of her residential drug treatment, Mother moved into a sober living home. Attached to the section 388 petition was confirmation of her drug treatment and sober living, and her sober living manager attested to her negative drug tests.

At a pretrial status conference on March 20, 2024, the court found Mother had made a prima facie showing and set an evidentiary hearing on Mother's section 388 petition for May 24, to be held concurrently with the section 366.26 hearing. The Agency recommended the court reject Mother's section 388 petition, terminate parental rights, and order a permanent plan of adoption. The guardian ad litem for the children joined the Agency in its recommendation.

Following a series of continuances, the court held the evidentiary hearing on Mother's section 388 petition in July and August 2024. The maternal grandfather testified he believed that Mother made significant

5

progress without the assistance of the Agency, after the court terminated her services.  He also believed Mother had been clean and sober since 2022.  According to Mother, by the time the hearing was held, she had been sober for approximately nine months.  In support of her petition, Mother's supervisor at the sober living facility described Mother's responsibilities at the sober living facility and her negative drug tests.  For her part, Mother testified that she believed she could care for D.M. because she had completed her certification to be a nursing assistant.  She explained that she prepared for the visits with the children and believed they were happy to see her.  Mother also detailed her efforts to maintain her sobriety.  She asserted her proposed change was in the children's best interest because she had consistent positive visitation and they were bonded with her.  A social worker for the Agency testified that Mother never requested additional or unsupervised visitation, and continued to abuse drugs before the termination of reunification services.  Further, she explained that the children rely on "consistent[cy] and routine" with their caregivers, and that P.M. did not list Mother as part of her family until prompted.  D.M. demonstrated anxiety when separating from the caregivers and looked to them for comfort.

After hearing arguments, the court determined Mother's sobriety constituted a change in circumstances and commended her for her efforts.  However, the court observed that Mother presented "little to no evidence that the children's best interest and permanency and stability would be furthered by the new order she [was] requesting."  The court found the children's permanency and stability were best met in the home of their caregivers.  The court thus denied Mother's petition and subsequently terminated her parental rights to the children.

DISCUSSION

Mother argues that the juvenile court abused its discretion by denying her section 388 petition because she changed her circumstances and established that returning the children to her care was in their best interest. We disagree.

A. *Applicable Principles*

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point, 'the focus shifts to the needs of the child for permanency and stability.' " (*Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*); *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 ["The parent is given a reasonable period of time to reunify and, if unsuccessful, the child's interest in permanency and stability takes priority."].) "A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*Stephanie M.,* at p. 317.) After termination of reunification services, "there is a rebuttable presumption that continued foster care is in the best interest of the child." (*Ibid*.)

"Section 388 provides an ' "escape mechanism" ' " for parents facing termination of their parental rights by allowing the juvenile court to consider a legitimate change in the parent's circumstances after reunification services have been terminated. [Citation.]" (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) Section 388 permits the parent of dependent children to petition the juvenile court for a hearing to modify a prior order (1) "upon grounds of change of circumstances or new evidence" and (2) if "the best interests of the child . . . may be promoted by the proposed change of order." (§ 388, subd. (a)(1), (d); see Cal. Rules of Court, rule 5.570(a).) A party filing a

section 388 petition "must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

Where a parent shows a change of circumstances, a court evaluating the children's best interest under section 388 should consider several factors: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532 (*Kimberly F.*), italics omitted.) Also "vital" is "the length of time a child has been in the dependency system in relationship to the parental bond." (*Id.* at p. 531.)

However, "[i]t is rare that the denial of a section 388 motion merits reversal as an abuse of discretion." (*Kimberly F., supra*, 56 Cal.App.4th at p. 522.) The juvenile court's determination that a proposed change in placement is not in the children's best interest "should not be disturbed on appeal unless an abuse of discretion is clearly established." (*Stephanie M., supra*, 7 Cal.4th at p. 318.) Reversal may be appropriate when the reason for removal is "not as serious as other, more typical reasons for dependency jurisdiction, such as sexual abuse, physical abuse, or illegal drug use" and the removal of that reason constitutes a "genuine change of circumstances." (*Kimberly F.,* at p. 522.)

B. *The Court Properly Denied Mother's Section 388 Petition*

Mother contends that she established a significant change in circumstances and that returning the children to her custody was in their best interest. In support of her argument that her circumstances were

8

genuinely changed, she points to her nine months of sobriety and engagement in her recovery. She acknowledges that the children have close attachments to their caregivers, but argues that returning them to her care is in their best interest because they are bonded with her and she is now able to care for them appropriately.

We look to each of the *Kimberly F.* factors in turn. First, this case falls squarely within the category of serious reasons for removal enumerated in *Kimberly F.* Mother admitted using methamphetamine, amphetamine, and fentanyl while pregnant, citing caring for her two eldest children as the reason for her relapse. Mother neither sought nor received prenatal care and gave birth to D.M. prematurely. D.M. tested positive for illicit drugs at her birth and experienced withdrawal symptoms while receiving care at the hospital. Mother chose not to visit D.M. in person or virtually in the nearly three months she was hospitalized. Mother continued to test positive throughout the reunification period and only became clean and sober following the termination of reunification services, close to two years after D.M.'s birth.

Second, we look to the strength of the bonds the children have with their caregivers and Mother. The court observed that the children had been with the caregivers for over two years. P.M. referred to the caregivers as "Mommy" and "Daddy" and listed them as the family that would live in her forever home with her. She did not add Mother until asked if Mother would be allowed to visit or live in P.M.'s forever home. D.M. has never lived with Mother and spent most of her young life with the caregivers. The visits the children had with Mother during the reunification period were sporadic and inconsistent. After the reunification period elapsed, Mother discontinued visits for a month while she received drug cessation treatment; the children

9

did not inquire about Mother or their visits and did not exhibit negative side effects from the disruption. When the children sought comfort, they routinely turned to the caregivers, even when Mother was available. Although Mother asserts that the children have also bonded with her, we conclude the court did not abuse its discretion when it determined the bond the children maintain with their caregivers was more significant and should be given more weight.

Finally, with respect to the degree to which the problem necessitating removal has been ameliorated, the court considered Mother's sobriety and lengthy history of use and relapse and found her history weighed against granting her petition. The court commended Mother for her progress, but was unable to conclude that Mother had ameliorated her substance addiction "down to her core." We likewise credit Mother for her efforts to combat her substance abuse problem. By the time of the juvenile court's ruling, Mother had demonstrated a nine-month commitment to her sobriety. To her credit, Mother was working two jobs as a sober living house manager and a nursing assistant. Mother seemed to be making a genuine attempt to turn her life around. Yet the juvenile court could reasonably determine that there remained a possibility for relapse after only nine months of sobriety, especially given that Mother cited her lack of assistance in raising two children as the reason for the prior relapse that precipitated this case. On this record, therefore, the juvenile court did not abuse its discretion by impliedly concluding that the problem necessitating removal had not yet been fully ameliorated.

Considering all the *Kimberly F.* factors, and the children's paramount need for permanency and stability at this stage of the proceedings, we conclude the juvenile court did not abuse its discretion when it found that

10

returning the children to Mother's care or expanding her visitation was not in their best interests.  Accordingly, Mother has failed to demonstrate any error in the juvenile court's denial of her section 388 petition.

DISPOSITION

The order denying Mother's petition is affirmed.


BUCHANAN, J.

WE CONCUR:



McCONNELL, P. J.



IRION, J.